```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------
In re

         SUCCESSOR BORROWER SERVICES, LLC,              09-13505 B

                      Debtor                  DECISION & ORDER
-------------------------------------------------------
MARIANNE T. O'TOOLE, AS CHAPTER 11 TRUSTEE
OF SUCCESSOR BORROWER SERVICES, LLC

                   Plaintiff

         v.                                    AP 10-1115 B

MOSCONE, EMBLIDGE & QUADRA, LLP,

                   Defendant
-------------------------------------------------------
```

        SilvermanAcampora LLP
        Lon J. Seidman, Esq., of counsel
        100 Jericho Quadrangle, Suite 300
        Jerricho, New York 11753
        Attorneys for Plaintiff Marianne T. O'Toole
          Chapter 11 Trustee

        Pinnacle Law Group LLP
        Matthew J. Shier, Esq., of counsel
        Kevin F. Rooney, Esq., of counsel
        425 California Street, Suite 1800
        San Francisco, CA 94104
        Attorneys for Defendant Moscone, Emblidge &
          Quadra, LLP

Bucki, U.S.B.J.

      In this Chapter 11 case, the trustee commenced an adversary proceeding to avoid a lien that the debtor had given to secure payment of legal fees that would arise in the defense of ongoing litigation in state court. A resolution of the present dispute requires that we examine the circumstances under which a security interest for legal fees will constitute a fraudulent conveyance. Further, we must consider the impact of 11 U.S.C. §502(b)(4) and §506(d) on the allowance of claims for pre-petition legal services.

On June 24, 2008, Elizabeth B. Ross filed a complaint in the Superior Court of the State of California to recover damages for breach of contract and other wrongful acts. The named defendants included five related parties: Gregory A. Stranger; Coralie K. Stranger; The Stranger Family Trust; Capital Defeasance Group, LLC; and Successor Borrower Services, LLC. Gregory and Coralie Stranger are married to each other and serve as co-trustees of the Stranger Family Trust. The Stranger Family Trust owns 98% of the stock of Successor Borrower Services and is the principal owner of Capital Defeasance Group. To assist with their defense, these defendants retained the law offices of Moscone, Emblidge & Quadra, LLP. ("Moscone"). Pursuant to written fee agreements with this firm, the defendants accepted joint representation and each promised to pay the resulting charges for legal fees and disbursements.

Paragraph 7 of the fee agreements provided that Moscone would issue monthly invoices and that "[a]ny current balance will be due and shall be paid in full within thirty (30) days after the statement is mailed." During the early stages of its representation, the law firm received payments totaling $20,000. By March of 2009, however, Moscone had rendered invoices for more than $127,000 of additional services. When the defendants failed to pay these amounts, the law firm threatened to withdraw from representation. After negotiations with its clients, Moscone agreed to continue its involvement, but on condition that it receive additional assurance of payment. To this end, Gregory Stranger promised that he would soon make a payment of $50,000 and that he would arrange a security interest that would collateralize outstanding and anticipated legal fees. Accordingly, on March 27, 2009, Successor Borrower Services signed a demand promissory note in the principal amount of $200,000. Then to secure this obligation, Successor Borrower Services executed a security agreement that pledged essentially all of Successor's assets as collateral for repayment of the note. To perfect this lien, Moscone filed a UCC Financing Statement with the Delaware Department of State on April 1, 2009. However, this new fee arrangement quickly unraveled. When Gregory Stranger failed to advance the sum of $50,000 as promised, the law firm secured permission from the California court to be relieved as counsel. On July 21, 2009, Moscone issued a final statement showing an unpaid balance due in the amount of $203,000.30.

Successor Borrower Services filed a petition for relief under Chapter 11 of the Bankruptcy Code on July 29, 2009. Pursuant to 11 U.S.C. § 362(a), this petition operated to impose an automatic stay of judicial proceedings against the debtor. Nonetheless, the debtor chose to respond affirmatively to the outstanding dispute with Elizabeth Ross. In an adversary proceeding that it started against Ross on February 19, 2010, Successor Borrower Services sought various relief, but most notably a declaratory judgement that Ross had no valid claim against the debtor. Ross responded with two motions, both filed in this court on May 13, 2010: a motion to dismiss the debtor's adversary proceeding and an application for stay relief to allow a resumption of proceedings as against the debtor in California. After giving due consideration to written and oral argument, we ruled that the adversary proceeding essentially sought to resolve the same claims that Ross had advanced in state court. Finding that the controversy involved primarily issues of state law, we abstained from deciding the merits of the dispute. Instead, by order dated June 18, 2010, this court granted stay relief to allow Ross to continue the California action, but not to enforce any judgment that might impose liability upon Successor Borrower Services.

On June 25 and July 9 of 2010, a creditor and the Office of the United States Trustee filed separate motions seeking either the conversion of this case to Chapter 7 or the appointment of a trustee in Chapter 11. After weighing these options as well as the debtor's preference to remain as a debtor in possession, the court ruled that an operating trustee would best serve the interests of the estate. By order dated August 12, 2010, the court then approved the appointment of Marianne T. O'Toole as Chapter 11 Trustee.

Promptly after her appointment, Trustee O'Toole undertook and completed negotiations to settle the Ross litigation. On August 19, 2010, the trustee filed a motion to approve a settlement that would allow to Ross an unsecured claim in the amount of $900,000. This sum represented only a resolution of the claim against Successor Borrower Services, and did not affect any claims that Ross wished to assert against the other defendants. Notice of a hearing on the proposed settlement was served upon the debtor's creditors, including Birk S. McCandlis,

LLC ("BSM"). Opposing the settlement, BSM asserted that the underlying liability was more appropriately charged only to Gregory Stranger. In the creditor's view, the proposed settlement would improperly dilute any distribution on account of other legitimate claims. The trustee argued that notwithstanding the probable outcome at trial, Ross had stated a cause of action to which the trustee would need to respond. Thus, in paragraph 24 of its motion to approve the settlement, counsel for the trustee stated their position, that "[b]ased upon the Debtor's known assets and potential avoidance claims or otherwise, the administrative costs inherent with appearing and/or defending the Debtor in the [California] State Court Action, at this time, will likely outweigh any distributions the Debtor may make on account of the Ross allowed claim." After hearing argument on the matter, this court overruled BSM and approved the settlement by order dated November 17, 2010.[1]

Moscone, Emblidge & Quadra filed a proof of secured claim in this case on September 18, 2009. Specifically, the firm asserted a right to payment of a sum in excess of $200,000, together with interest at the rate of seven percent from the date of its note and security agreement. In response to this claim, the trustee commenced the present adversary proceeding. As amended, the trustee's complaint seeks to avoid the law firm's security interest and to disallow its proof of claim. In requesting this relief, the complaint asserts a variety of legal theories, including assertions that the firm's lien is a fraudulent conveyance under the New York Debtor & Creditor Law and under section 548 of the Bankruptcy Code, that the lien is avoidable as a preference, and that the claim exceeds the fair value of consideration received by the debtor.

Presently before the court is a motion by the trustee for summary judgment on four of her twelve causes of action. In particular, the trustee now argues that the lien of Moscone, Emblidge & Quadra is constructively fraudulent under New York Debtor & Creditor Law § 273-a; that the lien is avoidable as a conveyance made with actual intent to defraud; and that the firm's

---

[1] Meanwhile, Ross continued the remainder of her litigation in California. After a jury trial, a verdict was rendered against Gregory Stranger for actual damages in the amount of $969,849.73 and for punitive damages in the amount of $1,500,000.

underlying claim should be disallowed for a lack of consideration. In its response, the defendant asks that the trustee's motion be denied and that the court instead grant summary judgment allowing the law firm's claim as filed. What follows is an analysis of these competing contentions.

## Discussion

### Constructive Fraud

Section 544(b)(1) of the Bankruptcy Code states generally that "the trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim . . . ." Pursuant to this authority, the trustee seeks to exercise the rights of creditors under the New York version of the Uniform Fraudulent Conveyance Act, N.Y. DEBT. & CRED. LAW §§ 270-281 (McKinney 2001). Where a conveyance or obligation is fraudulent, Debtor & Creditor Law §278 allows a creditor to set aside the transfer "as against any person except a purchaser for fair consideration without knowledge of the fraud." In its present motion, the trustee contends that the conveyance of a lien to Moscone is fraudulent under the following provision of Debtor & Creditor Law § 273-a:

> "Every conveyance made *without fair consideration* when the person making it is a defendant in an action for money damages . . . is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment."

(emphasis added). The trustee argues that the debtor granted a lien to Moscone at a time when the debtor was a defendant in the Ross litigation, and that that litigation resulted in a judgment that remains unpaid. Moscone does not question the existence of the unpaid judgment, but responds that it obtained its lien for fair consideration.

The absence of fair consideration is an essential element of the trustee's second cause of action. Debtor & Creditor Law §278 precludes the avoidance of liens given "for fair consideration without knowledge of the fraud," and a lien is fraudulent under Debtor & Creditor

Law §273-a only if made "made without fair consideration." For purposes of the New York statute, fair consideration is defined by Debtor & Creditor Law § 272, which reads as follows:

> "Fair consideration is given for property, or obligation,
> a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
> b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

The two parts of this definition are stated in the disjunctive, so that Moscone can establish fair consideration from either of two perspectives. Part (a) addresses the perspective of the transferor. At the time that it gave its lien to Moscone, Successor Borrower Services was a defendant in an action that Elizabeth Ross had commenced to recover substantial damages. The existence of other named defendants does not diminish the seriousness of the debtor's exposure. Indeed, the trustee herself confirmed the risk of liability when she would later accept a settlement that allowed to Ross an unsecured claim of $900,000. When facing such real potential for liability, prudent defendants will seek quality legal representation. With a legitimate need for continued representation, Successor Borrower Services acted in good faith when it granted a security interest as collateral for repayment of the note dated March 27, 2009. Pursuant to that note, the debtor promised to pay "the principal sum of Two Hundred Thousand Dollars ($200,000.00) in lawful money of the United States, or such lesser sum as is reflected on the records of the Obligee as being due and owing from Obligor for legal fees and disbursements." By its terms, therefore, the note and security interest extended only for an amount that was fairly (and exactly) equivalent to the value of legal services received. By reason of its good faith and exchange of fairly equivalent value, Successor Borrower Services fulfilled the first alternative definition for fair consideration.

Part (b) of Debtor & Creditor Law § 272 acknowledges fair consideration from the perspective of a transferee. Qualified providers of legal representation act reasonably when they take steps to assure their own compensation, and for that, they appropriately demand a retainer.

If not available in cash, a retainer may take the form of a guarantee or a lien like that which the debtor gave to Moscone.  Aside from special circumstances like a duty to provide *pro bono* services to the indigent, lawyers have a right to expect fair compensation. For this reason, reasonable retainers are inherently received in good faith.  Here, at the time that it obtained its retainer lien, Moscone had already issued outstanding bills for more than $127,000.  Moscone then provided a present advance in the form of a commitment to continue its legal representation.  Altogether, the value of unpaid legal services would exceed the granted lien of $200,000. In good faith, Moscone received an interest in property having a value that was reasonably proportionate to the amount due or value to be advanced for legal fees and disbursements.

Moscone's lien was both given and received in good faith and in exchange for a fair and proportionate value.  Accordingly, the trustee fails to demonstrate the lack of fair consideration.

Although Moscone represented five defendants, each defendant derived the benefit of a common defense.  But for the fact that most of the other defendants are themselves debtors in a bankruptcy proceeding, the trustee for Successor Borrower Services might have sought contribution for payments to Moscone.  However, any such right to contribution does not diminish the shared benefit of a joint response.  For this reason, the present circumstances are similar to those that the Court of Appeals considered in *HBE Leasing Corp. v. Frank*, 48 F.3d 623 (2nd Cir. 1995).  In that case, judgment creditors sought to avoid payments that a law firm received from a single defendant on account of its representation of both that defendant and several related parties.  The Court acknowledged that in other contexts, a fraudulent conveyance would normally occur whenever a defendant transferred property having a value greater than "the economic benefit that the debtor indirectly received from the entire transaction."  48 F.3d at 639.  But that formulaic analysis does not necessarily apply to the payment of legal fees.

> "The existence of some adverse interests among the co-defendants might reasonably have required each defendant to have individual counsel, but to the extent that the several defense attorneys conducted a joint defense, they effectively advanced the interests of all defendants simulta-

>    neously. Thus, the services that each defense
>    attorney performed in the course of conducting a
>    joint defense provided a benefit to each defendant.
>    . . . These joint services represented 'fair consider-
>    ation' for the payment of reasonable compensa-
>    tion, regardless of which defendant paid the bill."

*Id. (citations deleted).* Trustee O'Toole argues that *HBE Leasing Corp. v. Frank* is distinguishable from the present instance, in that Elizabeth Ross never asserted a claim for joint and several liability. That, however, is a detail without significance. The Ross complaint sought recovery from five defendants, all of whom faced the potential for significant liability. Commonalities in their defenses suggested the opportunity for a joint response. So long as Successor Borrower Services derived meaningful benefit from that joint defense, Moscone could properly look to the debtor for payment of its entire bill for legal services.

The trustee raises two other arguments in support of her claim under Debtor & Creditor Law § 273-a. First, at least with respect to the value of services rendered after the granting of the lien, Trustee O'toole asserts that fair consideration can never arise from a promise to provide future benefits. In support of her position, the trustee cites *HBE Leasing Corp. v. Frank*, 61 F.3d 1054 (2nd Cir. 1995), which found a lack of fair consideration "for transfers at the expense of creditors for unevaluated future legal services." 61 F.3d at 1061 (quoting the decision below at 851 F. Supp. 571, 574 (S.D.N.Y. 1994)). That case involved the advance of a flat fee as payment for services of uncertain scope and duration. In contrast, Moscone agreed to work on the defined task of providing a defense to the Ross litigation. Moscone's fees were not fixed, but would be calculated as the product of time and standard hourly rates. Under these circumstances, in exchange for a lien on assets, the debtor received fair consideration in the form of a commitment for continued legal representation.

Secondly, the trustee contends that Successor Borrower Services never received fair consideration, in that it paid the bulk of legal fees due for the defense of an action that was primarily directed against Gregory Stranger. This argument overlooks the fact that in its prayer for relief, the Ross complaint sought "judgment against Defendants and each of them" for the same monetary demand. Moreover, the trustee's own cause of action under Debtor & Creditor

Law § 273-a is predicated upon the existence of an action to recover money damages against Successor Borrower Services. By denying the meaningful potential of liability to Ross, the trustee contradicts the underlying rationale of her own cause of action. In any event, Trustee O'Toole is now estopped from denying the debtor's need to defend an action that would impose significant liability. In settlement of Ross's claim against Successor Borrower Services only, the trustee herself agreed to allow a claim of $900,000. Then in response to opposition to her motion to approve that settlement, the trustee asserted the serious risk of exposure at trial. Having advanced the argument that her settlement fell within the range of reasonableness, the trustee will not now succeed in disputing that the cost of a necessary defense was similarly reasonable.

When served with Ross's complaint, Successor Borrower Services was forced either to default or to defend. In choosing to defend, the debtor necessarily assumed responsibility for the cost of representation. Because the debtor received fair consideration for the lien that it gave to Moscone, section 273-a of the Debtor & Creditor Law recognizes no basis to avoid that transfer. Consequently, the court must deny the trustee's motion for summary judgment on its second cause of action.

### Intentional Fraud

The trustee's fifth and sixth causes of action seek, respectively, to avoid Moscone's lien under Debtor & Creditor Law § 276 and Bankruptcy Law § 548(a)(1)(A). Both statutes are similar, in that they allow the avoidance of a transfer made with actual intent to hinder, delay or defraud creditors. The trustee argues that because Gregory Stranger wished to hinder or delay Ross's recovery on her claim, the payment of legal fees by the debtor served a similar purpose of hindrance or delay. At this stage of proceedings, the proof is simply inadequate to establish any such intent by Mr. Stranger. But even if we were to assume that a co-defendant might wish to hinder or delay Ross's recovery, the undisputed facts dispel any basis to find that the debtor transferred assets with any wrongful intent.

At the time of the transfer to Moscone, Successor Borrower Services was one of the defendants in an action seeking substantial damages from multiple parties. With respect to the liability of Successor Borrower Services only, the trustee eventually reached a settlement that allowed to Ross an unsecured claim in the amount of $900,000. By reason of this potential for liability, any prudent defendant would have selected competent counsel to provide an appropriate defense. No client could fairly expect representation without assurance of payment for legal fees and disbursements. In the present context, the payment to Moscone represents not an affirmative effort to hinder, delay or defraud, but the cost of a response in an action that Ross had initiated.

Competent and attentive counsel are necessary participants in any complex litigation. Without their input, the legal process will stagnate. The likelihood for diligent representation is compromised, however, whenever lawyers encounter problems with payment of legal fees. For this reason, reasonable retainers serve to promote the prompt and efficient resolution of disputes. *See In re City Mattress, Inc.*, 163 B.R. 687 (Bankr. W.D.N.Y. 1994). Rather than to hinder or delay creditors, the payment to Moscone facilitated the ultimate resolution of Ross's claim.

Delay often serves as an appropriate trial strategy, but the appropriate use of that strategy does not tarnish the legitimacy of a legal fee or retainer. If the court were to treat the payment to Moscone as a transfer made with intent to hinder, delay or defraud, then surely we would compromise the process of dispute resolution. Would not a retainer for bankruptcy counsel be treated as a transfer to hinder the payment of all creditors? Strident imaginations might suggest unusual circumstances in which a transfer to counsel serves the purpose of deception. However, the present facts indicate nothing other than a transfer to secure payment of legal fees. Even if others may have benefitted from that expenditure, the debtor necessarily incurred those fees for its own defense. Because the trustee fails to establish any actual and wrongful intent, we must deny its motion for summary judgment on its claims under Debtor & Creditor Law § 276 and Bankruptcy Law § 548(a)(1)(A).

Lack of Consideration

In its eleventh cause of action, the trustee seeks the disallowance of a proof of claim filed by the Moscone law firm.  As originally presented, this proof of claim asserted an entitlement for a sum "in excess of $200,000 secured."  The trustee contends that under 11 U.S.C. § 502(b)(4), a claim for legal services is limited to the value that those services have to the debtor.  Because Gregory Stranger derived primary benefit from Moscone's services, the trustee asks that the estate's responsibility be limited to what Moscone can substantiate as having actually inured to the debtor's benefit.  Absent such proof, the trustee seeks summary judgment disallowing Moscone's claim in full.

In responding to the trustee's motion for summary judgment, Moscone has provided time and disbursement records that support its bill for an outstanding balance due of $203,000.30.  The law firm asserts, however, that the promissory note and security agreement should define its allowed claim and that these instruments allow for the recovery of collection costs and interest.  Thus, Moscone now claims an entitlement to the principal balance of the note in the amount of $200,000, together with legal fees related to its collection efforts in the amount of $38,491.30, and together with interest at the stated annual rate of seven percent compounded monthly.  Altogether, the firm calculates a secured claim in the total amount of $279,592.61, together with interest from February 10, 2012.

Both the trustee and Moscone misapply the controlling standard for the allowance of Moscone's claim.  Section 502(b) of the Bankruptcy Code provides generally that if an objection to a claim is made,

> "the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that . . . . (4) if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services."

Because Moscone served as an attorney for the debtor, its claim may not exceed the reasonable value of unpaid services as of the date of the filing of the debtor's bankruptcy petition.  The

language of section 502(b) limits the claim not to the value that those services may have had to the debtor, but to the reasonable value of whatever services were provided. Pursuant to the written fee agreements, Successor Borrower Services and its co-defendants accepted responsibility for the cost of joint representation. Moscone has fully documented its charges, and the court discerns no basis to challenge their reasonableness. Hence, the court will allow the outstanding balance due to Moscone, as of the date of bankruptcy filing, in the amount of $203,000.30.

Section 502(b) directs that attorney claims be allowed for their reasonable value "as of the date of the filing" of the bankruptcy petition. As noted by the court in *In re Siller*, 427 B.R. 872, 879 (Bankr. E.D. Cal. 2010), "[t]he claim for compensation for services by an attorney for the debtor is disallowed in bankruptcy to the extent that it exceeds the reasonable value of such services." Consequently, the court must disallow Moscone's further claim for interest and for reimbursement of expenses incurred in its collection efforts. Nor does the secured status of Moscone's claim change the amount of its allowance. Section 502 speaks to the allowance of all claims, whether secured or unsecured. This outcome is further confirmed by 11 U.S.C. §506(d), which states in relevant part as follows:

> "To the extent that a lien secures a claim that is not an allowed secured claim, such lien is void, unless – (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of claim under section 501 of this title."

Although the rule of section 506(d) does not apply in limited instances such as with respect to the disallowance of claims under 11 U.S.C. § 502(b)(5), Congress imposed no similar exception with respect to claims disallowed under 11 U.S.C. §502(b)(4). Pursuant to section 502(b)(4), Moscone's total allowed claim is limited to the value of services and disbursements in the amount of $203,000.30. Of this allowable claim, the security agreement creates a lien only for the note's principal balance of $200,000. Pursuant to section 506(d), Moscone's lien is void for

any greater sum, such as for interest or collection costs.  Accordingly, the court will allow to Moscone a secured claim for $200,000, and an unsecured claim for $3,000.30.

## Conclusion

For the reasons stated above, the court will deny the trustee's motion for summary judgment on its second cause of action to avoid Moscone's lien under Debtor & Creditor Law § 273-a, and on its fifth and sixth causes of action to avoid that lien as a transfer made with actual intent to hinder, delay or defraud creditors.  Adequacy of consideration will preclude a finding of constructive fraud for purposes of Debtor & Creditor Law §273(a).  With no basis to find an actual intent to hinder, delay or defraud, the trustee is unable to avoid the transfer to Moscone under either Debtor & Creditor Law §276 or Bankruptcy Law §548(a)(1)(A).  Moscone's cross-motion is therefore granted, to the effect that the second, fifth and sixth causes of action are dismissed.  With regard to the trustee's eleventh cause of action, the trustee's motion for summary judgment and Moscone's cross-motion are each granted in part and denied in part. Moscone's proof of claim will be allowed as a secured claim in the amount of $200,000 and as an unsecured claim in the amount of $3,000.30, and will be otherwise disallowed.

The trustee's motion and Moscone's cross motion do not speak to the first, third, fourth, seventh, eighth, ninth and tenth causes of action.  With regard to that portion of this decision which allows Moscone's claim in part, the ruling of the court is subject to the provisions of 11 U.S.C. § 502(j), which allows reconsideration of the allowance or disallowance of a claim for cause.  The trustee may therefore seek a reconsideration of Moscone's claim, to the extent that its allowance is impacted by a judgment that she might hereafter obtain with respect to any of causes of action that this decision does not address.

So ordered.

Dated: Buffalo, New York                                 /s/    CARL L. BUCKI
       March 19, 2013                             Hon. Carl. L. Bucki, U.S.B.J., W.D.N.Y.